# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:  JANET MARIE WEBER,                                   No. 7-10-10058 JA

   Debtor.

PHILIP J. MONTOYA, Trustee,

   Plaintiff,

v.                                                            Adversary No. 10-1056

DENISE BATTAGLIA,

   Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment and Memorandum of Law ("Motion for Summary Judgment"). *See* Docket No. 28. Defendant, Denise Battaglia, *pro se*, filed a response. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment – Docket No. 31. At issue is whether the Debtor's payment of $8,000.00 to Defendant on the eve of filing bankruptcy is a recoverable preferential transfer under 11 U.S.C. § 547.

The facts underlying this adversary proceeding are sympathetic to the Defendant. She provided the Debtor with a place to live when the Debtor's home and its contents burned to the ground. She agreed to defer payment of rent for nearly a year until the Debtor received proceeds from her insurance policy compensating the Debtor for her loss. But, as many of us have experienced in the real world, "no good deed goes unpunished." Or, to paraphrase a song from the Jungle Book: "a friend in need, is a friend indeed," unless your friend happens to file a petition for bankruptcy. After consideration of the Motion for Summary Judgment and the response thereto, and being otherwise sufficiently informed, the Court finds that the transfer at

issue constitutes a recoverable preference under 11 U.S.C. § 547 and that Defendant cannot establish an ordinary course of business or financial affairs defense to the transfer. Plaintiff, is, therefore, entitled to summary judgment as a matter of law.

## SUMMARY JUDGMENT STANDARDS

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c) made applicable to the adversary proceeding by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether to grant a movant's request for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment.[1]

## FACTS NOT SUBJECT TO GENUINE DISPUTE

The following facts are not subject to a genuine dispute:

1. The Debtor's mobile home was vandalized and burned in a fire in 2008.

2. Defendant offered her home to Debtor to live in after the Debtor's loss of her home.

3. Defendant told the Debtor that the Debtor could defer the payment of rent until the Debtor received the proceeds from her insurance claim for the loss of the Debtor's home.

---

[1] *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 2007)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' ")); *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)(internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .").

2

4. Defendant and Debtor had an oral agreement that the deferred monthly rental payments would be $775.00 in total, consisting of $485.00 per month for rent, $60.00 for water, $160.00 for utilities, and $70.00 for cable and internet expenses.

5. The total debt that the Debtor owed Defendant for ten months rent and utilities was $7,750.00.

6. Debtor paid Defendant $8,000.00 on January 7, 2010 in payment of the deferred rent. This amount included an additional $500.00 for use by the Defendant toward the purchase of a new washing machine.[2]

7. Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 8, 2010.

8. The Debtor's schedules filed with her voluntary petition reflect that the Debtor's debts totaled $155,428.25, including unsecured priority claims in the amount of $72,955.00 and unsecured non-priority claims in the amount of $36,040.25, and that the total value of the Debtor's assets is $76,202.00. *See* Case No. 10-10058, Docket No. 1.

## DISCUSSION

Preferential transfers are governed by 11 U.S.C. § 547(b), which provides:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

---

[2] No explanation is given in the papers for the $250.00 discrepancy.

3

> > (5) that enables such creditor to receive more than such creditor would receive if –
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and
> > > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> 11 U.S.C. § 547(b).

If the transfer was made within ninety days of the date of the filing of the Debtor's bankruptcy petition, there is a presumption that the Debtor was insolvent as of the date of the transfer. 11 U.S.C. § 547(f) ("For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."). The trustee bears the burden of proving all the elements necessary to establish a preferential payment under 11 U.S.C. § 547(b). *See* 11 U.S.C. § 547(g) (providing that "the trustee has the burden of proving the avoidability of a transfer under subsection (b) . . .").[3]

The undisputed material facts establish that the transfer at issue constitutes a preferential transfer within the meaning of 11 U.S.C. § 547(b). Under the terms of the Defendant's agreement with the Debtor, the Debtor owed Defendant for deferred rental payments. The Debtor paid the Defendant a portion of the insurance proceeds on account of that antecedent debt. The payment was made one day prior to the date of the filing of the Debtor's bankruptcy petition. At the time of the payment, the Debtor was presumed to be insolvent. *See* 11 U.S.C. § 547(f). No evidence of solvency was presented.

Finally, based on the Debtor's schedules, the payment to Defendant, who otherwise would have held a nonpriority unsecured claim, enabled the Defendant to receive more than she would have received if: 1) the Debtor's bankruptcy estate were liquidated under Chapter 7; 2)

---

[3] *See also, In re Robinson Bros. Drilling, Inc.,* 6 F.3d 701, 703 (10th Cir. 1993)(recognizing that "[u]nder 11 U.S.C. § 547(g), a trustee seeking to avoid an allegedly preferential transfer under § 547(b) 'has the burden of proving by a preponderance of the evidence every essential, controverted element resulting in the preference.'")(quoting 4 Collier on Bankruptcy ¶ 547.21[5] at 547-93 (15th ed. 1993)).

4

the transfer had not been made; and 3) the Defendant received a payment on her claim from the Debtor's bankruptcy estate in accordance with the Bankruptcy Code. The Debtor's schedules reflect that she had total unsecured debts in the amount of $108,995.25, including priority unsecured claims in the amount of $72,955.00, and assets in the total amount of $76,202.00. "Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 465 (6th Cir. 1991)(citation omitted).[4] Within the applicable reach back period, the Debtor paid the Defendant the full amount of Defendant's claim. Had the transfer not occurred and the Debtor's chapter 7 estate been liquidated, unsecured creditors would not have received full payment on their claims. Thus, based on the undisputed material facts, Plaintiff has established all elements necessary to establish an avoidable preferential transfer under 11 U.S.C. § 547(b).

Once the trustee has established that the transfer constitutes a preferential transfer under 11 U.S.C. § 547(b), the burden of proof shifts to the creditor to establish that an exception applies to the avoidability of the transfer. *See* 11 U.S.C. § 547(g)("For the purposes of this section, . . . the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."). The Defendant maintains that the transfer is not avoidable because the exception contained in 11 U.S.C. § 547(c)(2) applies. That exception applies to certain debts incurred by the debtor in

---

[4] *See also Connolly v. Fiber Instrument Sales, Inc. (In re Western Integrated Networks, LLC),* 350 B.R. 628, *3 (10th Cir. BAP 2006)(Table)(acknowledging that "when the estate is found to be insolvent on the petition date, such a finding is sufficient to satisfy the preferential treatment standard of § 547(b)(5) where general unsecured creditors are involved.")(citing *Ossen v. Bernatovich (In re Nat'l Safe Northeast, Inc.),* 76 B.R. 896, 907 (Bankr.D.Conn. 1987)(citing *Elliott v. Frontier Properties (In re Lewis F. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir. 1985)).

5

the ordinary course of business or financial affairs of the debtor and the transferee. Defendant concedes that she is not in the business of renting out her home, but requests the Court to construe "ordinary course of business or financial affairs of the debtor" to except the Debtor's pre-petition payment to her from recovery by the trustee.

The ordinary course of business or financial affairs exception to preferential transfers is found in 11 U.S.C. § 547(c)(2). That section provides:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee , and such transfer was –
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11U.S.C. § 547(c)(2).

To satisfy the requirements of 11 U.S.C. § 547(c)(2), the Defendant must establish two elements. The first element is contained in the first clause of 11 U.S.C. § 542(c)(2). The second element is established by satisfying the requirements of 11 U.S.C. § 547(c)(2)(A) or (B). The first element, contained in the first clause of 11 U.S.C. § 547(c)(2), whether the debt was incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, "focuses on the nature of the original transaction creating the debt and whether it was ordinary." *Wagner v. Dakota West Credit Union (In re Weaver),* 2007 WL 4868302, *3 (Bankr.D.N.D. 2007)(citing *Meeks v. Harrah's Tunica Corp. (In re Armstrong),* 231 B.R. 723, 731 (Bankr.E.D.Ark. 1999), *aff'd,* 260 B.R. 454 (E.D.Ark. 2001), *aff'd,* 291 F.3d 517 (8th Cir. 2002)). The first alternative prong of the second element, whether the payment was made in the ordinary course of the business or financial affairs of the debtor and the creditor, is a "subjective test" that considers whether the transfers were ordinary as between the

parties.[5] The second, alternative prong of the second element of the ordinary course of business or financial affairs exception,[6] which considers whether the transfer is consistent with standard industry practices for similar transactions, is often described as the "objective test".[7]

Defendant does not contend that the transaction is ordinary in the sense that it is consistent with industry standards; consequently, the Court need only consider whether the transaction meets the first clause of 11 U.S.C. § 547(c)(2) and requirements of 11 U.S.C. § 547(c)(2)(A). To establish an ordinary course of business or financial affairs defense under the first clause of 11 U.S.C. § 547(c)(2) and 11 U.S.C. § 547(c)(2)(A), the creditor must prove 1) that the debt was *incurred* in the ordinary course of the business or financial affairs of the parties; and 2) that the *payment* was made in the ordinary course of the business or financial affairs of the parties. *See* 11 U.S.C. §§ 547(c)(2) and 547(c)(2)(A).

Plaintiff contends that the transaction is not ordinary because 1) it did not occur in connection with normal trade or credit conditions; 2) there is no evidence of any prior transactions between the parties nor anyone else that is similar to the transaction at issue; and 3) the payment was not made according to ordinary business terms because it was dependent upon the occurrence of an extraordinary event: the Debtor's receipt of the insurance proceeds on her claim. First-time transactions can sustain an ordinary course of business or financial affairs defense.[8] In addition, the phrase "financial affairs" used in 11 U.S.C. § 547(c) makes "it clear

---

[5] *See Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.),* 220 B.R. 1005, 1020 (10th Cir. BAP 1998)(citations omitted)(explaining that whether the transfers are ordinary as between the parties is a subjective test).

[6] *See In re Allied Carriers' Exchange, Inc.,* 375 B.R. 610, 616 n. 3 (10th Cir. BAP 2007)(acknowledging that after the 2005 amendments to the Bankruptcy Code, a creditor asserting the ordinary course of business defense to a preference action must demonstrate "either the subjective test or the objective test[.]" Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, creditors had to satisfy both prongs.).

[7] *Sunset Sales,* 220 B.R. at 1020 (stating that the exception under § 547(c) for transfers made according to ordinary business terms "creates an objective test, i.e., whether the transfers were ordinary in the industry.").

[8] *See Gosch v. Burns (In re Finn),* 909 F.2d 903, 908 (6th Cir. 1990)(stating that the issuance of a debt "can be in the ordinary course of financial affairs even if it is the first such transaction undertaken by the [parties]."); *Kleven*

7

that the exception applies to both consumer and business debtors." 5 Collier on Bankruptcy ¶ 547.04[1][c][2], 547-54.1 (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2009).[9] In this case, however, *both* the Debtor and the Defendant are consumers. Defendant therefore urges the Court to view the transaction as the "Debtor's own responsibility for her own personal well being and to secure further interest [sic] in a place to live."[10]

Under the first clause of 11 U.S.C. § 547(c)(2), the Court must view the initial transaction that created the debt from the perspective of both debtor *and* creditor to determine whether it was ordinary.[11] When there are no prior transactions between the parties, the Court should consider whether the debt is "ordinary in relation to this debtor's and this creditor's past practices when dealing with other similarly situated parties." *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.),* 482 F.3d 1117, 1126 (9th Cir. 2007).[12] Based on the facts not in

---

*v. Household Bank F.S.B.,* 334 F.3d 638, 642 (7th Cir. 2003)(observing that most courts "side with the view that a first-time transaction is not per se ineligible for protection from avoidance under § 547(c)(2)."); *Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.),* 182 B.R. 728, 735 (Bankr.W.D.Va. 1995)(stating that "a first time transaction is no less susceptible of qualifying for an ordinary course of business exception than a transaction that has occurred frequently in the past.")(citation omitted).

[9] *See also, Redmond v. Ellis County Abstract & Title, Co. (In re Liberty Livestock Co.),* 198 B.R. 365, (Bankr.D.Kan. 1996)(stating that "[e]ven if the creditor is not a traditional lender, if the transaction was ordinary as between this particular debtor and creditor, then it was in the ordinary course of their business."); *Fidelity Sav. & Inv. Co. v. New Hope Baptist,* 880 F.2d 1172, 1174 (10th Cir. 1989)(rejecting the argument that the ordinary course of business exception only applies to trade creditors).

[10] *See* Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 3 (Docket No. 31).

[11] *See Armstrong,* 231 B.R. at 730 (stating that "the transfer must be made in payment of a debt incurred in the ordinary course of financial affairs of the debtor *and* the transferee.")(citation omitted)(emphasis in original).

[12] *See also Schnittjer v. Pickens (In re Pickens),* 2008 WL 63251, *3 (Bankr.N.D.Iowa 2008), *order amended to change amount of recoverable preference by* 2008 WL 346147 (Bankr.N.D.Iowa 2008)("If it is a first-time transaction, the transaction must be typical compared to both parties' past dealings with similarly situated parties.")(citing *Ahaza,* 482 F.3d at 1125 and *Kleven,* 334 F.3d at 643); *Weaver,* 2007 WL 4868302 at *3 ("In cases where no prior history exists between the parties, a factual analysis should be conducted to determine whether the transaction would be one that would have occurred in the ordinary course of the financial affairs of a borrower or debtor in the same position.")(citing *Armstrong,* 231 B.R. at 731); *Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.),* 2010 WL 4622449, *7 (Bankr.S.D.N.Y. 2010)(acknowledging that courts recognizing "first time" transactions as in the ordinary course "look to whether the transaction was one that the debtor would ordinarily enter into.")(citing *Finn,* 909 F.2d 903 at 908 (remaining citations omitted).

Some courts also look to whether the transfers between the parties to a first-time transaction were made in accordance with the terms of the parties' agreement for purposes of determining whether the transaction was "ordinary." *See, e.g., Kleven,* 334 F.3d at 643 (stating that "the ordinary course of business may be established by the terms of the parties' agreement, until that agreement is somehow or other modified by actual performance. In the absence of modifying behavior, we see no reason why we should not look to the terms of the parties'

8

genuine dispute, the Court finds that the debt was not incurred in the ordinary course of the business or financial affairs of either the Debtor *or* the Defendant.  The transaction was a first-time transaction for both the Debtor and the Defendant.  Defendant is not in the business of renting out a room in her home or making similar extensions of credit; nor is there any evidence that she has done so in the past.  There is no evidence before the Court that either the Defendant or the Debtor entered into a similar transaction with any other party.  Further, the agreement between the Defendant and the Debtor occurred under unusual or extraordinary circumstances:  the Debtor's home burned down, and Defendant offered Debtor a place to stay but agreed to defer payment of rent until the Debtor received proceeds under her insurance claim.  Nor did the parties enter into a written lease agreement, which would be typical in an arms-length transaction for a residential rental agreement.[13]

Because this case involves two, non-commercial consumer parties, the facts underlying this case are somewhat similar to the facts in *In re Pickens,* 2008  63251 (Bankr.N.D.Iowa 2008).  In *Pickens,* the debtors' parents lent the debtors $30,000 to start up a small business.  The debtors also used their parents' credit card to purchase inventory for the business.  The debtors made payments on the loan in the months preceding their bankruptcy filing.  In

---

agreement in order to determine their ordinary course of business."); *Tulsa Litho Co. v. BRW Paper Co., Inc. (In re Tulsa Litho Co.)*, 229 B.R. 806, 809 (10th Cir. BAP 1999)("[I]f there are no prior transactions, courts should generally look to see whether the debtor adhered to the contract payment terms.")(citation omitted).  *Kleven* and *Tulsa Litho* were both decided prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which slightly modified the language of 11 U.S.C. §547(c) by moving the words: "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee" from subsection (A) to the introductory part of (c)(2). Under the former law how the debt was incurred and how the debt was paid were included in the same subsection.  In the Court's view, the effect of moving the language from former subsection (A) to the introductory part of (c)(2) is to place the focus of the first prong on the way the debt was *incurred,* rather than how the payment  was made (which is now found in subsection (A)).   Consequently, the Court believes it is not appropriate to consider whether the payment was made according to the terms of the parties' agreement to establish that the debt was *incurred* in the ordinary course of the business or financial affairs of the parties.

[13] *See* 5 Collier on Bankruptcy, ¶547.04[2][a], 547-59 (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2009) (observing that "a debt will not be considered incurred in the ordinary course of business if creation of the debt is atypical . . . or not consistent with an arms-length commercial transaction.")(citation omitted).

rejecting the parents' ordinary course of business or financial affairs defense, the Bankruptcy Court found that the parents were not in the business of extending credit to small businesses or to family members, that the parents had not made such loans to family members in the past, and that the parents had never allowed others to use their credit cards. *Id.* at *4. The Court concluded that the parents could not satisfy the first element of the ordinary course of business defense because the loans were not incurred in the parents' ordinary course of business or financial affairs.

The same holds true for the Debtor's payment to the Defendant. There is no evidence to establish that the transaction was ordinary for either the Debtor or the Defendant. To the contrary, there is no evidence that the Debtor or Defendant had ever engaged in a similar transaction, and the circumstances surrounding the transaction were out of the ordinary for a person in the Debtor's position. The transaction as a whole is not the type of transaction the Court would expect the parties to enter into as part of their ordinary financial practices. Because the facts not in genuine dispute establish that the debt was not *incurred* in the ordinary course of the business or financial affairs of the Debtor and the Defendant, the Court need not consider whether the *transfer* was made in the ordinary course of business or financial affairs of the parties. Defendant's ordinary course of business or financial affairs defense fails. The Debtor's transfer of $8,000 to the Defendant therefore is an avoidable preferential transfer.

The Trustee seeks a judgment against the Defendant in the amount of $8,000.oo. Under 11 U.S.C. § 550(a), with certain exceptions not applicable here, if a transfer is avoided under 11 U.S.C. § 547 the "trustee may recover [from the initial transferee, among others], for the benefit of the estate, the property transferred, or, if the court so orders, the value of the property…." The Defendant is the initial transferee. Because the property transferred was cash

or a cash equivalent, the Court will order that the Trustee may recover the $8,000.00 value of the transferred property.

## CONCLUSION

The purpose of 11 U.S.C. § 547 is to ensure that creditors receive fair and equitable distribution of the debtor's assets.[14] The ordinary course of business or financial affairs exception must be construed narrowly in order to further that purpose.[15] Here, while Defendant laudably acted to help the Debtor by providing her with the basic necessity of shelter, the Debtor's repayment to Defendant on the eve of bankruptcy nevertheless constitutes an avoidable preferential transfer. Defendant cannot sustain an ordinary course of business or financial affairs defense to defeat the trustee's avoidance action. The Court, therefore, concludes that the Motion for Summary Judgment should be granted. A judgment and order consistent with this Memorandum Opinion will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

---

[14] *See In re Marshall,* 550 F.3d 1251, 1254 (10th Cir. 2008)(stating that "[t]he purpose of the [preference] statute is two-fold: (1) 'to secure an equal distribution of assets among creditors of like class' and (2) 'to discourage actions by creditors that might prematurely compel the filing of a [bankruptcy] petition.'")(quoting *Gillman v. Scientific Research Prods., Inc. of Del. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 554 (10th Cir. 1995)). *See also Jobin v. Matthews (In re M & L Business Mach. Co., Inc.),* 184 B.R. 136, 139 (D.Colo. 1995)(stating that "[t]he purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankrutpcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the court house to dismember the debtor during his slide into bankruptcy. . . . Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor . . . .'")(quoting H.R.Rep No. 95-595, 95th Cong., 2d Sess. 177-178 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6137-38); *Miller v. Martin (In re Goss),* 378 B.R. 320, 326 (Bankr.E.D.Okla. 2007)("The purpose of the Trustee's avoidance power is to insure all creditors receive equal distribution from assets available)(citing *Gill v. Winn (In re Perma Pac. Properties),* 983 F.2d 964, 968 (10th Cir. 1992)).

[15] *See Tulsa Litho,* 229 B.R. at 809 (stating that the ordinary course of business defense is narrowly construed)(citing *Sunset Sales,* 220 B.R. at 1020)(remaining citation omitted); *In re Furrs Supermarkets, Inc.,* 296 B.R. 33, 40 (Bankr.D.N.M. 2003)(stating that "[t]he §547(c)(2) defense is narrowly construed" and noting further that " '[p]references are disfavored, and subsection C makes [terms wholly unknown to the industry] more difficult to prove.'")(quoting *In re Tolona Pizza Products, Corp.,* 3 F.3d 1029, 1032 (7th Cir. 1993)(remaining citations omitted)).

11

Date entered on docket: July 5, 2011

COPY TO:

**Bonnie Bassan Gandarilla**
Moore, Berkson & Gandarilla, P.C.
Attorney for Plaintiff
PO Box 7459
Albuquerque, NM 87194

**Denise Battaglia**
Defendant
14010 Phoenix Ave. NW
Albuquerque, NM 87107

12